UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF GEORGIA
VALDOSTA DIVISION

**JANICE DRIGGERS,**   CASE NO.

    Plaintiff,

v.

**CAMP HOSPITALITY, INC.,**

    Defendant.
_____/

## COMPLAINT

Plaintiff, JANICE DRIGGERS, hereby sues Defendant, CAMP HOSPITALITY, and alleges:

## NATURE OF THE ACTION

1. This is an action brought under 29 U.S.C. §629 et seq. and 42 U.S.C. §§12101 et seq., all as amended.

2. This is an action involving claims which are, individually, in excess of Seventy-Five Thousand Dollars ($75,000.00), exclusive of costs and interest.

## THE PARTIES

3. At all times pertinent hereto, Plaintiff, JANICE DRIGGERS, has been a resident of the State of Georgia and was employed by Defendant. Plaintiff is a member of a protected class due to her age, over 40, and due to the

1

fact that she is actually disabled or was perceived as disabled.

4. At all times pertinent hereto, Defendant, CAMP HOSPITALITY, INC., has been a Georgia domestic for-profit corporation doing business in, and with its principal office in, Thomas County, Georgia, at 1950 Georgia Highway 122, Thomasville, Georgia 31757. Defendant operates a hotel at this location under the name Hampton Inn Thomasville or Hampton by Hilton pursuant to, on information and belief, a franchise, operating, or management contract with the Hampton or Hilton organizations. At all times pertinent to this action, Defendant has been an "employer" as that term is used under the applicable laws identified above.

5. Plaintiff has satisfied all conditions precedent to bringing this action in that Plaintiff was fired on or about February 5, 2023. She filed a charge of discrimination with the Equal Employment Opportunity Commission approximately 88 days later, on May 4, 2023, and was assigned EEOC Case No. 410-2023-07690. She became eligible to request and receive, and has requested, her right to sue letter after the passage of the 180th day from the filing of her charge. The 180th day was October 31, 2023. This action is timely brought thereafter.

## STATEMENT OF THE ULTIMATE FACTS

## OVERVIEW

6. This is an employment discrimination lawsuit. Plaintiff is a 74-year-old female. She was employed as a front-desk clerk at the hotel operated by Defendant in Thomasville Georgia. She worked there from March 2021 through February 5, 2023, when she was fired because of her age and disability. She was 74 at the time of her termination. She was vastly older than her fellow front desk clerks, some of whom were more than fifty years her junior. Unlike her fellow employees, she also suffered from a disability, which required her to sit for periods of time and which substantially limited her ability to walk.

7. At the time she was fired, it was at minimum implied to her through words, tone of voice and demeanor that the company owners thought that the appearance of the older, disabled Plaintiff sitting on a stool at the front desk was unsightly. Franchise representatives, Plaintiff was told, were coming to visit, and it was implied to her that the owners thought the appearance of Plaintiff sitting on a stool was unsightly and would send the wrong message. They wanted Plaintiff to stand or leave. Plaintiff explained that the stool was a necessity, not a convenience, and that she needed it as a disability-related accommodation. Defendant then fired her.

## ADDITIONAL FACTUAL ALLEGATIONS

8. Plaintiff lives in Pavo, Thomas County, Georgia. She learned about the job as a front desk clerk after applying for a night auditor position. She is mobile, and able to walk around, but not like most people. Plaintiff has a foot disability that limits her ability to stand for long periods or to walk excessively. The foot condition is caused in part by her diabetes (neuropathy) and in part because of a prior injury where she broke the bones in her foot. Plaintiff also has a diabetic ulcer on the bottom of her foot. The more she walks, the more aggravated the diabetic ulcer becomes, and the more difficult it becomes to heal in any meaningful way. She understood the night auditor position to require very little active walking, which fit her perfectly.

9. When Plaintiff first applied for the job, she told Christie Headley, a manager, that she had a disability that substantially limited her ability to stand for long periods or to walk long distances, as compared to people, and that she would need a stool if she were employed by Defendant. Headley told Plaintiff that she would be required to walk extensively as the night auditor, because the person in that position was required to set up breakfast operations each morning for guests, which included transferring items for breakfast from the kitchen to the breakfast area. Plaintiff, being as candid as possible to ensure that she was a good fit for the hotel and vice versa, said she would not be able to do that.

10. To Plaintiff's pleasant surprise, Headley did not stop there, but in response, told Plaintiff that the front desk position for specific shifts, either the 8:00 AM ET - 4:00 PM ET or the 4:00 PM ET – 12:00 AM ET schedule might work just fine given Plaintiff's disability. Headley said the front desk position, unlike the night auditor position, would not require much standing. So, Plaintiff withdrew her application for the night auditor position, said she could perform the essential functions of the desk job, and asked again for assurance she ccould use a stool. Headley agreed. During this conversation, Plaintiff provided additional information to Headley about her disabling condition. Plaintiff shared that she had actually worn an orthopedic boot for two years before working for Defendant, which had affected her condition, which has worsened both her foot and pain and conditions in her back. All of these, Plaintiff told Headley, limited her ability to stand or walk for meaningful distances. Headley said this was fine, told Plaintiff that she did not need to submit a new application, and offered the job to Plaintiff.

11. Plaintiff then began work using a stool, and she used a stool during every shift she worked for Defendant from that point forward.

12. But in January 2023, things changed. Plaintiff was told that she could no longer use the stool. Ms. Headley told Plaintiff that Headley had talked to "Bob," one of the owners (believed to be Robert L. Emmett), and that Bob had told Ms. Headley that front desk employees would now need to begin

standing at all times while someone was in the lobby. This was a drastic change from the policy, custom, practice, and accommodation that had been extended to Plaintiff. Defendant told Plaintiff that this had always been the policy. But that was not true. First, Plaintiff had reviewed a copy of materials relating to the position and nowhere did those materials that she was given say that standing was a requirement for a front desk clerk.

13. But even after Plaintiff pointed out to Headley that there was no policy, Headley said that things had changed, and that Plaintiff would in fact need to start standing at all times while non-employees were in the lobby. When Plaintiff respectfully pressed Headley about the promise Headley made, knowing that Plaintiff could not stand, Headley agreed that the hotel had made that deal. Headley even offered to follow up and talk to the owners to see if they would change their minds. But when Headley returned, she told Plaintiff that notwithstanding the prior accommodation, Plaintiff would have to begin standing whenever non-employees were present. This was a purely cosmetic change. It was not because the essential functions of the job were now different.

14. Defendant's decision to unilaterally cancel Plaintiff's disability-related accommodation immediately jeopardized her employment. On Plaintiff's shift, as Defendant well knew, people were always coming and going. This meant, then, that Plaintiff would have to stand for several hours at a time, if not the entire shift, because there were often lines of people waiting to check in

during check-in time. Headley and Defendant well knew that Plaintiff, with her disability, could not endure or survive this change. One feature of Plaintiff's 4:00 PM – 12:00 AM shift was that she continually encountered many arriving guests, as check-in each day was no earlier than 3:00 PM ET. This meant that much of the daily check-in activity did not begin in earnest until just before Plaintiff's shift began.

15. Further, the majority of arriving guests appeared sometime between 5:00 PM ET and 8:00 PM ET. Some also arrived later, up to the end of her shift. There was no way to tell exactly when any guest would check in. Thus, the stripping of her accommodation meant Plaintiff would likely be forced to stand for long periods of time, if not the entirety of her shift. Because of the rule - that Plaintiff would have to stand as long as anyone was in the lobby, she would be forced to stand during check-ins, during check-outs, as guests mingled in the lobby after checking in or out, as guests walked to and from their rooms or snacks, as they walked to and from their transportation, and for every other purpose. In other words, the use of any person's presence in the lobby as the guiding principle on whether Plaintiff could use a stool meant that she could rarely, if ever, sit down.

16. Prior agreement notwithstanding, Headley told Plaintiff that the rule would kick in on February 6, 2023, with both of them understanding that this meant the immediate end of Plaintiff's employment. And Plaintiff was

firedPlaintiff has retained the undersigned to represent Plaintiff's interests and demands her attorneys' fees and costs be paid by Defendant.

## COUNT I

## AGE DISCRIMINATION

17. Paragraphs 1 through 17 are hereby realleged and incorporated herein by reference.

18. As more fully described above, Plaintiff was subjected to discrimination on the basis of Plaintiff's age (74).

19. At all times pertinent hereto, Plaintiff remained qualified for the positions Plaintiff held with Defendant.

20. Defendant knew or should have known of the offensive working conditions to which Plaintiff was subjected because it participated in the adverse treatment of Plaintiff. Defendant knew or should have known of these conditions as well because Plaintiff challenged them with supervisors within Defendant and officials within Defendant perpetuated the actions and inactions against Plaintiff. The adverse treatment of Plaintiff, together with the facts set forth above, were brought to the attention of Defendant and Defendant perpetuated this treatment by condoning the actions and inactions affecting Plaintiff. More specifically, no younger employee was subjected to terms and conditions that caused their firing.

21. No younger employee was told, directly or indirectly, or had implied, that their presence, appearance, or characteristics were unsightly, undesirable, would offend guests, or otherwise create a negative impression for guests and visitors. One of the other front desk employees, Armani Miller was 17 years old, and thus 57 years younger than Plaintiff. Another, Leonard, last name unknown was 19 years old, or 55 years Plaintiff's junior. The use of the stool was seen by Defendant as causing Plaintiff, and thus the hotel, to appear to visitors as old and feeble, especially given Plaintiff's age. However, the stool did not interfere with Plaintiff's work in any way. No guest ever claimed offense at Plaintiff's use of a stool or even hinted at such a thought. Defendant sought to clear the 74-year-old, disabled Plaintiff out of the facility, in part because of its perception of her as elderly and disabled. An inspection of the facility by the franchise parent was imminent, Plaintiff was told, reinforcing that Plaintiff was considered undesirable due to her age, disability, or both.

22. Defendant harbored ill motives and intent to cause disparate treatment of Plaintiff.

23. Defendant is responsible for the violations of Plaintiff's rights as set forth herein because it exercised control over the adverse treatment of Plaintiff. In the alternative, Defendant failed to properly supervise its

employees thereby causing foreseeable harm to Plaintiff's rights set forth herein. At all times material hereto, the actions and inactions affecting Plaintiff were committed in the course of the employment or supervisory relationship employees had with Defendant and with its actual or constructive knowledge. Defendant is thereby vicariously liable to Plaintiff for all of the unlawful conduct of its agents, apparent agents, assigns, employees, and officials.

24. The actions and inactions of Defendant affected a term, condition, or privilege of Plaintiff's employment with Defendant.

25. Plaintiff has been damaged as a direct or indirect result of Defendant's actions against her, which damages include but may not be limited to the following: mental pain and suffering, emotional distress, loss of capacity for the enjoyment of life, embarrassment, humiliation, lost wages, and other remuneration/emoluments affiliated with her position and other tangible and intangible damages. These damages have occurred in the past, are continuing at present, and will most likely occur in the future.

## COUNT II
## DISABILITY DISCRIMINATION

26. Paragraphs 1 through 17 are realleged and incorporated herein by reference.

27. This is an action against Defendant for disability discrimination.

28. Plaintiff has been the victim of discrimination on the basis of his disability or perceived disability. During the course of Plaintiff's employment with Defendant, she was treated differently than similarly situated non-disabled/perceived-as-disabled employees. Further, Defendant agreed to provide Plaintiff an accommodation specifically for her disabling condition because it allowed to perform the essential functions of her position with accommodation, and posed no cost or undue burden on the hotel. Then, Defendant, without Plaintiff's consent, and over her objection, stripped away the accommodation, for purely cosmetic reasons. Defendant knew that removing the accommodation would cause actual harm to Plaintiff and that she could no longer remain employed.

29. Defendant is liable for the differential treatment and its refusal to accommodate Plaintiff, which adversely affected the terms and conditions of Plaintiff's employment with Defendant. Defendant controlled the actions and inactions of the persons making decisions affecting Plaintiff or it knew or should have known of these actions and inactions and failed to take prompt and adequate remedial action or took no action at all to prevent the abuses to Plaintiff.

30. In essence, the actions of agents of Defendant, which were each condoned and ratified by Defendant, were disability/perceived-disability based and in violation of the laws set forth herein.

31. The discrimination complained of herein affected a term, condition, or privilege of Plaintiff's continued employment with Defendant. The events set forth herein lead, at least in part, to Plaintiff's termination.

32. Defendant's conduct and omissions constitutes intentional discrimination and unlawful employment practices based upon disability or perceived disability or his record of having an impairment under the Americans with Disabilities Act.

33. As a direct and proximate result of Defendant's conduct described above, Plaintiff has suffered emotional distress, mental pain and suffering, past and future pecuniary losses, inconvenience, mental anguish, loss of enjoyment of life and other non-pecuniary losses, along with lost back and front pay, interest on pay, bonuses, and other benefits. Plaintiff is entitled to injunctive/equitable relief.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands judgment against Defendants for the following:

    (a) An injunction restraining continuing violations of the laws enumerated herein;

(b) Reinstatement to the same position that Plaintiff held before the retaliatory personnel actions, or to an equivalent position;

(c) Reinstatement of full fringe benefits and seniority rights, to the extent such were available to her, as well as instatement of pay increases and any other improvement in compensation or benefits

(d) Compensation for past and future lost wages, benefits, and diminution in her skills and earning capacities;

(e) Liquidated damages as allowed by law under the ADEA;

(f) Punitive damages as allowed by law under the ADA;

(g) Damages as allowed by law, including pain and suffering;

(h) Attorney's fees and costs, and

(i) Equitable relief including the following: reinstatement, removal of all negative information from her personnel file that are related to her separation, her age, or her disability; training for Defendant's management on discrimination and harassment relating to age and disabilities.

## DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands a trial by jury on all issues herein that are so triable.

DATED this 21st day of November 2023.

Respectfully submitted,

/s/ Jim Garrity
Jim Garrity; FBN 121837
MARIE A. MATTOX, P. A.
203 N Gadsden Street
Tallahassee, FL 32301
Telephone: (850) 383-4800
Facsimile: (850) 383-4801
Jim@JimGarrityLaw.com
ATTORNEYS FOR
PLAINTIFF